UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Anthony Charles Wyder,

        Plaintiff,

v.

Carolyn W. Colvin, Acting Commissioner
of Social Security,

        Defendant.

**Decision and Order**

1:16-CV-00817-HBS

(Consent)

## I.   Introduction

This action is brought pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3) to review the final determination of defendant, Commissioner of Social Security, that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits ("DIB") and/or Supplemental Security Income Benefits ("SSI"). Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties filed cross-motions for judgment on the pleadings. Dkt. Nos. 13, 18. For the reasons set forth in this opinion, defendant's motion is GRANTED and plaintiff's motion is DENIED.[1]

## II.   Background

### A.   Procedural Background

On November 13, 2012, plaintiff Anthony Charles Wyder protectively filed DIB and SSI applications. Tr. 23. He alleged disability beginning January 31, 2012. *Id*. On April 11, 2013, the Social Security Administration ("SSA") denied these applications. *Id*. Plaintiff subsequently filed for a hearing with an administrative law judge ("ALJ"). This hearing took place November 25, 2014. *Id*. On January 27, 2015, the ALJ issued a decision denying plaintiff's claim of disability.

---

[1] The parties consented to Rule 73 jurisdiction on June 15, 2018. Dkt. No. 20.

Tr. 20. Plaintiff then filed a request for review with the Appeals Council, but this request was denied. Tr. 2.

Having exhausted all administrative remedies, plaintiff filed a complaint with this Court on October 14, 2016. Dkt. No. 1, at 2. He alleges that the ALJ's January 27, 2015 decision was not supported by substantial evidence, warranting judgment in his favor or, alternatively, remand for further administrative proceedings. *Id*.

### B. Factual Background

Plaintiff was born on February 16, 1977, aged thirty-six years at the time he filed his applications for benefits. Tr. 86. He testified to obtaining a GED. Tr. 54. He has past work experience as a core drill operator. Tr. 35. The ALJ found plaintiff's list of severe impairments to include bipolar disorder, anxiety, ADHD, polysubstance abuse in early sustained remission, chronic pain syndrome, and obesity. Tr. 25.

#### 1. Medical Evidence of Record

Plaintiff received primary care from Dr. Matthew Fernaays at Pembroke Family Medicine. Tr. 320–424, 658–795. Dr. Fernaays diagnosed plaintiff with chronic pain syndrome on January 17, 2013. Tr. 326. Plaintiff reported pain and difficulty sleeping on that day. Tr. 324. On March 29, 2013, plaintiff reported muscle spasms and pain with no improvement of his symptoms. Tr. 712. Upon objective examination, plaintiff's physician noted stiffness in the neck, point tenderness at the thoracic paravertebral area bilaterally and the lumbar paravertebral area, and diffuse spasm at the left vertebral scapular border. Tr. 713. On April 12, 2013, plaintiff reported that his pain had worsened, Tr. 709, but objective examination revealed no physical abnormalities. Tr. 710. On October 30, 2013, plaintiff reported that he "still ha[s] bad days" but that his prescribed pain medications provided relief. Tr. 679. There were no abnormal objective

findings. Tr. 680. On May 28, 2014, plaintiff reported that his pain was better with increased movement, and that he was taking less pain medication. Tr. 665. On July 23, 2014, plaintiff reported that he "ha[s] a lot of pain", can walk one-quarter mile with stops, has difficulty sitting and standing for a long time, does not lift anything, and has trouble bending. Tr. 660. It was also noted that "he does have an SSI application pending." *Id*. Objective exam revealed no abnormalities except for "slow ambulation." Tr. 661.

On September 17, 2014, Dr. Fernaays issued a medical source statement regarding plaintiff's conditions. Tr. 253–58. This statement was given on a standardized form provided by the SSA, and consisted entirely of "checkboxes" for the physician to mark. *Id*. Dr. Fernaays marked that plaintiff could neither sit nor stand for longer than one hour uninterrupted. Tr. 254. He marked that plaintiff could occasionally lift up to fifteen pounds, reach, handle, finger, push, and pull. Tr. 253–55. He indicated that all of plaintiff's limitations would last for twelve consecutive months. Tr. 258. The form contained spaces for the physician to provide written explanations for checking particular boxes, but Dr. Fernaays declined to use these spaces.

Plaintiff received numerous imaging tests and other objective medical tests. Following a motor vehicle accident on August 2, 2012, plaintiff received CT scans of the head, neck, and spine, as well as x-rays of the low back and left shoulder. Tr. 31. CT of the head showed no evidence of fracture or injury, Tr. 283, CT of the cervical spine showed minimal degenerative changes, Tr. 284, and x-ray studies were negative. Tr. 285–87. On March 19, 2013, plaintiff had a normal EMG study. Tr. 781. On April 3, 2013, plaintiff had a normal MRI of the lumbar spine. Tr. 726.

Plaintiff visited the emergency room two additional times after his motor vehicle accident, first on August 18, 2013, Tr. 546, and then on September 15, 2013. Tr. 541. During

3

both visits, plaintiff specifically denied back pain, neck pain, and joint pain. Tr. 541, 546. Upon objective examination in his September visit, no abnormal findings were noted other than left hand pain resulting from an injury. Tr. 542.

    2.    ALJ's Decision

On January 27, 2015, the ALJ issued an unfavorable decision regarding plaintiff's claim for disability benefits. Tr. 37. He found that plaintiff had several severe impairments, but that these impairments did not meet listing level severity. Tr. 25–27. After considering the record, the ALJ found that plaintiff had the residual functional capacity ("RFC") to "lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently, sit for 2 hours in an 8-hour workday, and stand/walk for 6 hours in an 8-hour workday." Tr. 27. Plaintiff also had "occasional limitations in bending, climbing, stooping, squatting, kneeling, and crawling." *Id*. He could not "climb ropes, ladders or scaffolds, work in areas with unprotected heights, or work around heavy, moving or dangerous machinery." *Id*. Plaintiff also had numerous non-exertional limitations. Tr. 28 ("occasional limitations in the ability to work in coordination with or in proximity to others without being distracted by them . . . occasional limitations in dealing with stress . . . occasional limitations in the ability to make decisions . . . occasional limitations in the ability to maintain attention and concentration for an extended period"). Ultimately, the ALJ concluded that while plaintiff could no longer perform past relevant work, there were jobs in the national economy that plaintiff was capable of performing. Tr. 35. Thus, the ALJ found plaintiff not disabled. Tr. 37.

## III. Discussion

The sole issue to be reviewed by this Court is whether the ALJ's decision that plaintiff was not under a disability is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rivera v.*

*Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)); *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) ("[substantial evidence] is less than a preponderance of the evidence but more than a mere scintilla"). The ALJ's disability determination must be upheld by this Court even if "substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### A. Disability Standard

For purposes of both SSI and DIB, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467

5

(2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether plaintiff is currently working;

(2) whether plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents plaintiff from continuing past relevant work; and

(5) whether the impairment prevents plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to determine plaintiff's RFC and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). RFC is described as "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). When determining RFC, the ALJ considers "all the relevant evidence in [a claimant's] case record." *Id*.

B. **Plaintiff's Arguments**

Plaintiff raises two issues regarding the ALJ's determination of the RFC. First, plaintiff argues that the ALJ inadequately explained the nature of his ability to deal with stress. Dkt. No. 13-1, at 23. Next, plaintiff argues that the ALJ failed to provide "good reasons" for assigning "little weight" to Dr. Fernaays' medical source statement. Dkt. No. 13-1, at 26. Plaintiff contends that these errors are individually sufficient to warrant remand of the case for further administrative proceedings. Dkt. No. 13-1, at 26, 29. This Court shall address each issue separately below.

1. Explanation of the Nature of Plaintiff's Stress

Plaintiff first asserts that remand is required because the ALJ's assessment that plaintiff had "occasional limitations dealing with stress" was inadequate. Dkt. No. 13-1, at 23. Social Security Ruling 85–15 ("SSR 85–15") states that "[t]he reaction to the demands of work (stress) is highly individualized . . . ." SSR 85–15, 1985 WL 56857, at *6 (S.S.A. Jan. 1, 1985). Thus, there is a need for "thoroughness in evaluation on an individualized basis" that "must be reflected in the RFC assessment" when considering a claimant's stress. *Id.*, at *5. Accordingly, the ALJ should "make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work." *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 188–89 (W.D.N.Y. 2006) (citing *Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y. 1996)).

The text of SSR 85–15, however, specifically states that the ruling only "clarifies policies applicable in cases involving the evaluation of *solely* non-exertional impairments." SSR 85–15, 1985 WL 56857, at *2 (emphasis added). In an unpublished opinion, the Second Circuit interpreted this language to mean that SSR 85–15 "does not apply to a case . . . in which the claimant suffers from a combination of exertional and non-exertional impairments." *Roma v.*

*Astrue*, 468 F. App'x 16, 20 (2d Cir. Jan. 19, 2012) (summary order). District Courts within the Second Circuit have applied the *Roma* Court's interpretation of SSR 85–15. *Yarington v. Colvin*, No. 13–CV–016S, 2014 WL 1219315 (W.D.N.Y. Mar. 24, 2014) ("SSR 85–15 does not even apply to a case like this, where the claimant suffers from a combination of exertional and non-exertional limitations"); *Nosbisch v. Astrue*, No. 10-CV-285S, 2012 WL 1029476, at *5 (W.D.N.Y. Mar. 26, 2012) ("SSR 85–15, however, only addresses the medical-vocational rules for evaluating *solely* non-exertional impairments") (emphasis original); *Prince v. Colvin*, No. 13 CIV. 7666 TPG, 2015 WL 1408411, at *21 (S.D.N.Y. Mar. 27, 2015) ("SSR 85–15 applies only where the plaintiff suffers solely from nonexertional limitations, and does not apply where the plaintiff suffers from a combination of exertional and nonexertional impairments") (citing *Roma*, 468 F. App'x at 20). Furthermore, the Ninth Circuit has addressed this issue and came to the same conclusion as the *Roma* Court. *Sandgathe v. Chater*, 108 F.3d 978, 980–81 (9th Cir. 1997) ("SSR 85–15, however, 'provides guidance only for cases in which the claimant asserts "solely nonexertional impairments"' . . . SSR 85–15 therefore does not apply") (quoting *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995)).

Plaintiff does not dispute that the ALJ's RFC assessment in this case reflects both exertional and non-exertional limitations. *See supra* Part II(B)(2). He also does not raise any factual issues that distinguish this case from *Roma*.[2] Dkt. No. 13-1, at 24. However, plaintiff urges this Court to "reconsider" the Second Circuit's holding in *Roma* because its construction of SSR 85–15 produces an "absurd result." Dkt No. 13-1, at 25; *United States v. Turkette*, 452 U.S. 576, 580 (1981) ("authoritative administrative constructions should be given the deference to

---

[2] Plaintiff does suggest that this case may be distinguished from *Roma* because the ALJ inadequately explained plaintiff's stress in this case, whereas the ALJ in *Roma* wholly failed to consider the issue of stress. Dkt. No. 13-1, at 24. However, plaintiff appears to have misread *Roma*. 468 F. App'x at 17 ("[o]n appeal, Roma contends that . . . the ALJ . . . did not follow SSR 85–15 *when he evaluated stress as a factor* in his decision") (emphasis added).

8

which they are entitled, absurd results are to be avoided and internal inconsistencies in the statute must be dealt with" when interpreting statutes). Plaintiff argues that there is no rational basis for courts to disregard SSR 85–15 in cases where a claimant has both exertional and non-exertional limitations, despite the language of SSR 85–15 stating that the purpose of the ruling is to "clarif[y] policies applicable in cases involving the evaluation of solely nonexertional impairments." SSR 85–15, 1985 WL 56857, at *2.

Regardless of the merits of plaintiff's policy argument, the weight of authority falls squarely in favor of the Commissioner. The Second Circuit addressed this issue directly in *Roma*, the District Courts have applied *Roma* consistently, and at least one other Circuit Court interpreted SSR 85–15 in accordance with the Second Circuit. Furthermore, plaintiff did not present any cases from the Circuit or District Courts that applied his preferred construction of SSR 85–15. He asserts that one case, *Collins v. Colvin*, No. 15-CV-423-FPG, 2016 WL 5529424 (W.D.N.Y. Sept. 30, 2016), presents a situation where SSR 85–15 was applied to a claimant with "both exertional and non-exertional impairments." Dkt. No. 13-1, at 26. However, this assertion is inaccurate. The ALJ in *Collins v. Colvin* found severe physical and mental impairments at step two of the five-step sequential evaluation, 2016 WL 5529424, at *1, but found solely non-exertional limitations when assessing the claimant's RFC. *Id.*, at *2 ("the ALJ determined that [claimant] . . . has minimal to no limitations in following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration, maintaining a regular schedule, learning new tasks with supervision, making appropriate decisions, and relating adequately with others"). Therefore, SSR 85–15 was applied consistently with *Roma* in that case.

Finally, this Court acknowledges that *Roma* is a summary order and thus is technically non-binding precedent. However, there are no circumstances here to suggest that the Second Circuit would rule differently than it did in *Roma*. Therefore, the Court prefers to follow the weight of persuasive authority and hold that the ALJ did not err in evaluating plaintiff's stress because SSR 85–15 does not apply in this case. Plaintiff has preserved this issue for appeal.

2. Rejection of a Treating Source's Medical Opinion

Next, plaintiff contends that the ALJ erred because he failed to provide "good reasons" for giving the opinion of plaintiff's treating source, Dr. Fernaays, "little weight" when calculating plaintiff's RFC. Dkt. No. 13-1, at 26. Ordinarily, when the ALJ determines a claimant's RFC, a treating source's opinion is given controlling weight. 20 C.F.R. § 404.1527(c)(2). However, if that opinion is not consistent with other substantial evidence in the record, the ALJ need not give it controlling weight. *Id*. If the ALJ does not give a treating source's opinion controlling weight, he must provide "good reasons" for the weight given to a treating source's opinion. *Id*. When making a weight determination, the ALJ must consider several factors: the length of the treatment relationship, the nature and extent of the relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and whether the physician in question is a specialist. 20 C.F.R. § 404.1527(c)(2, 3–5).

In this case, the ALJ provided two reasons for giving Dr. Fernaays' opinion "little weight": (1) Dr. Fernaays did not supply any medical evidence or clinical finding to support his opinion, and (2) Dr. Fernaays' opinion was not consistent with the rest of the medical evidence. Tr. 35. Plaintiff argues that these reasons do not amount to "good reasons", thus remand is required. For the following reasons, this Court disagrees.

With regard to the first reason provided by the ALJ, plaintiff argues that "[t]he regulation simply does not require the treating physician to identify what specific findings support their opinion . . . ." Dkt. No. 13-1, at 28. Plaintiff is correct that the regulations do not demand that treating sources identify specific findings to support their opinion. However, whether a treating source presents evidence to support their opinion is one of the explicitly enumerated factors that the ALJ must consider when assigning weight to a medical opinion. 20 C.F.R. § 404.1527(c)(3) ("[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion"). Indeed, Dr. Fernaays' opinion does not provide any supporting evidence, nor any written explanations. His opinion is given on a "checkbox" form, and while the form contains prompts to explain the reasons for checking particular boxes, Dr. Fernaays failed to answer any of these prompts. Tr. 253–58. The Second Circuit has held that such standardized form opinions are "only marginally useful for purposes of creating a meaningful and reviewable factual record." *Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004); *see also Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"). Thus, the ALJ correctly applied 20 C.F.R. § 404.1527(c)(3) when assigning weight to Dr. Fernaays' opinion.

Plaintiff also disputes the ALJ's second reason for assigning "little weight" to Dr. Fernaays' opinion, which was that the opinion was inconsistent with the record as a whole. Dkt. No. 13-1, at 28. While plaintiff admits that this might potentially be considered a "good reason" for assigning "little weight", he also contends that the ALJ erred by not explaining why the opinion was inconsistent. Additionally, since the ALJ did not provide evidence to explain the

inconsistency he perceived, plaintiff asserts that any consideration of the evidence in relation to the ALJ's assertion of inconsistency would amount to an impermissible post hoc rationalization. Dkt. No. 19, at 2.

As a general principle, this Court may not "accept appellate counsel's post hoc rationalizations for agency action." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). However, the regulations do not require a laborious explanation in this instance; rather, they merely require the ALJ to consider the factors in § 404.1527(c) and give "good reasons" for assigning less than controlling weight to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). Therefore, this Court must uphold the Commissioner's decision so long as the ALJ's stated reason is supported by substantial evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("[w]hen, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he . . . have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability"); *see also Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("[a]n ALJ does not have to state on the record every reason justifying a decision") ("[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered") (internal quotation marks omitted).

Substantial evidence supports the ALJ's finding that Dr. Fernaays' opinion "is not supported by the medical evidence of record." Tr. 35. Dr. Fernaays' opined that plaintiff had extensive limitations that would have compelled a more restrictive RFC.[3] However, this opinion is inconsistent with Dr. Fernaays' own treatment notes. The ALJ discussed these notes in the section of his decision determining plaintiff's RFC:

---

[3] For example, Dr. Fernaays opined that plaintiff could only stand for one hour and sit for one hour in an eight-hour work day, Tr. 34, whereas the ALJ determined that plaintiff could stand for six hours and sit for two hours in an eight-hour work day.

12

> The claimant saw [Dr. Fernaays] on July 23, 2014. He complained of back pain and reported the following functional limitations: cannot sit or stand for more than 5 minutes without feeling uncomfortable . . . . However, the only examination findings were slow ambulation and simple obesity.

Tr. 33 (internal citations omitted). The ALJ made it clear in this statement that, despite plaintiff's complaints of pain, the objective findings on physical examination were relatively benign. In fact, on the date referenced by the ALJ, plaintiff's physical examination revealed that he "appear[ed] healthy and well developed." Tr. 661. Such normal objective findings are typical throughout plaintiff's primary care treatment notes. Tr. 663, 666, 668, 674, 680, 696, 707, 710. While some adverse objective findings were occasionally present, they do not appear to be chronic problems resulting from plaintiff's conditions.[4] These generally normal findings substantiate the ALJ's claim that Dr. Fernaays' medical source statement is inconsistent with the record. *Lamorey v. Barnhart*, 158 F. App'x 361, 363 (2d Cir. Jan. 19, 2006) (summary order) (substantial evidence supported the ALJ's determination not to give a medical opinion controlling weight because the opinion was "inconsistent with other record evidence . . . also belied by [the physician's own] treatment notes").

Furthermore, the ALJ referred to laboratory evidence inconsistent with Dr. Fernaays' opinion. Following his motor vehicle accident on August 2, 2012, plaintiff's x-ray studies and head CT were normal. Tr. 31. The ALJ noted that subsequent studies within the following year were also normal. Tr. 31 ("[o]n March 19, 2013, EMG/nerve conduction studies of the claimant's left arm and leg were normal. Two weeks later, an MRI of the claimant's lumbar spine was normal"). The plethora of negative imaging tests supports the assertion that Dr. Fernaays' highly restrictive RFC assessment is not consistent with the objective medical evidence.

---

[4] For example, on March 19, 2014, Dr. Fernaays observed that plaintiff had an antalgic gait. Tr. 671. However, plaintiff reported that day that he had been kicked in the chest by a goat, which caused him severe pain. Tr. 670. In plaintiff's subsequent appointment, there were no abnormal objective findings. Tr. 668.

Finally, plaintiff's September 15, 2013 emergency room visit supports the ALJ's findings. The ALJ remarked that plaintiff "specifically denied back pain" when he visited the hospital. Furthermore, the ALJ noted that plaintiff's "[m]usculoskeletal and neurological examinations were normal" notwithstanding left hand pain as a result of an injury.

In conclusion, substantial evidence supports the reasons the ALJ provided for assigning "little weight" to Dr. Fernaays' opinion. The reasons the ALJ provided are consistent with the factors that he was required to consider under 20 C.F.R. § 404.1527(c). Therefore, the ALJ did not fail to provide "good reasons" for assigning plaintiff's treating physician "little weight."

## IV.  Conclusion

Substantial evidence supports the ALJ's findings regarding plaintiff's RFC. The ALJ committed no legal error in his decision. For these reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is DENIED and defendant's cross-motion (Dkt. No. 18) is GRANTED. The Clerk of the Court shall close this case.

SO ORDERED.

_/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: August 15, 2018